# EXHIBIT A

NEW YORK COUNTY CLERK 06/29/2021 01:31 PM

'O. 1

INDEX NO. 156172/2021

RECEIVED NYSCEF: 06/29/2021

*By hand :*
*7-7-21*
*9:45 Am*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

IRINA MANTA,

              Plaintiff,

    -against-

HOFSTRA UNIVERSITY,

              Defendant.

------------------------------------------------------------x

Index No. 156172/2021

SUMMONS

To the above-named Defendant:

      Hofstra University
      101 Hofstra University
      Hempstead, NY 11549

      You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

      The basis of venue is C.P.L.R. § 503(a) as New York County is the county of Plaintiff's residence.

Dated:      June 29, 2021
            New York, New York

                        LAW OFFICE OF
                        KEVIN MINTZER, P.C.

          By:       _____
                        Kevin Mintzer
                        1350 Broadway – Suite 2220
                        New York, New York 10018
                        (646) 843-8180
                        km@mintzerfirm.com

                        Counsel for Plaintiff Irina Manta

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM

NYSCEF DOC. NO. 1

INDEX NO. 156172/2021

RECEIVED NYSCEF: 06/29/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

IRINA MANTA,

               Plaintiff,

      -against-

HOFSTRA UNIVERSITY,

               Defendant.

-------------------------------------------------------------x

Index No. 156172/2021 _____

COMPLAINT

     Plaintiff Irina Manta ("Plaintiff" or "Professor Manta"), by her counsel, the Law Office of Kevin Mintzer, P.C., complaining of Defendant Hofstra University ("Defendant" or "Hofstra") alleges as follows:

## NATURE OF CLAIMS

     1.    Irina Manta, a law professor at the Maurice A. Deane School of Law at Hofstra University ("Hofstra Law" or the "Law School") brings this action because Hofstra has for years failed to pay her in a non-discriminatory manner in comparison to her male peers. Despite being aware of these sex-based pay disparities, Hofstra has refused to correct them and has retaliated against Professor Manta for opposing its discriminatory practices. By its conduct, Hofstra has violated the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, the New York State Equal Pay Act ("NYEPA"), N.Y. Labor Law § 194, and the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).

## PARTIES, JURISDICTION, and VENUE

     2.    Plaintiff Irina Manta is a 40-year-old woman.  She is a resident of New York County.

     3.    Hofstra University is a private university located in Hempstead, New York.

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

4.   This Court has jurisdiction over Plaintiff's claims because, at all relevant times, Plaintiff has lived and worked in the State of New York and the amount at stake exceeds the $25,000 jurisdictional limit of the Civil Court.

5.   This Court is an appropriate venue for this action under C.P.L.R. § 503(a) because Plaintiff resides in New York County.

FACTS

Professor Manta's Background Before Hofstra

6.   Irina Manta was born in Bucharest, Romania and moved to Switzerland with her family when she was three. In 2000, at age 20, she came to the United States to attend college. She has lived in the United States since then and became a citizen of the United States in 2012.

7.   Professor Manta graduated magna cum laude from Yale University in 2003 with a Bachelor of Arts in psychology. She completed her undergraduate studies in three years and graduated Phi Beta Kappa.

8.   In 2006, Professor Manta graduated from Yale Law School ("YLS"). While at YLS, she was the Tributes Editor and a member of the Admissions Committee of the Yale Law Journal.

9.   Following her law school graduation, Professor Manta served as a law clerk to Judge Morris S. Arnold on the United States Court of Appeals for the Eighth Circuit in Little Rock, Arkansas. While clerking for Judge Arnold, she also served as an Adjunct Professor at the University of Arkansas School of Law, where she taught trademark & copyright as well as a seminar on law and social science.

10.   After clerking for Judge Arnold, Professor Manta was for two years a Bigelow Teaching Fellow and Lecturer in Law at the University of Chicago Law School, where she taught

2

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

legal research, writing, and analysis to first-year law students and a seminar on trademark law &
policy to upperclassmen.

11.     The Bigelow Fellowship is widely considered to be one of the most prestigious, if
not the most prestigious, fellowship available in the legal academy.

12.     Following the Bigelow Fellowship, in 2009, the Case Western Reserve University
School of Law in Cleveland, Ohio, hired Professor Manta as an Assistant Professor of Law.

13.     At Case Western, Professor Manta taught trademark and unfair competition, and
property. Her employment at Case Western was highly successful. With respect to scholarship,
she published or had accepted for publication notable articles in well-regarded publications,
including the *Arizona Law Review*, *Boston College Law Review*, and the *Harvard Journal of Law
& Technology*. Also, while at Case Western, she provided service to the university and law school
in many ways, including through committee work and support to student associations and societies.

14.     Professor Manta received very positive feedback about her performance from Case
Western's administration and colleagues on the law school faculty. Had she remained at Case
Western, it is highly likely that she would have been awarded tenure and promoted to full
professor. However, for personal and family reasons, Professor Manta preferred to take a position
in the Northeastern United States and sought a new position in that area. For the same reasons,
during her final academic year while employed by Case Western, Professor Manta worked as a
Visiting Associate Professor at Brooklyn Law School.

Professor Manta's Hiring at Hofstra

15.     In July 2012, Professor Manta began her employment with Hofstra as an Associate
Professor. She was hired to teach intellectual property subjects and, for what was supposed to be
a limited time, property law. Her starting salary was $129,000.

3

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
INDEX NO. 156172/2021
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 06/29/2021

16.     Before accepting Hofstra's offer, Professor Manta sought to have her starting salary increased. Manta told the Law School's then-interim Dean, Eric Lane, that, accounting for the cost of living in the New York area, Hofstra's offer was far less than what she was making at Case Western in Ohio. Dean Lane replied, in substance, that Hofstra could not do anything about the cost of living issue, and he suggested that Hofstra Law had a salary scheme that limited what he could offer. But this was not true. Hofstra's salary structure did not prevent Dean Lane from offering Professor a higher starting salary. Rather, Hofstra made a discretionary decision to pay Professor Manta less than the salaries it paid to male law professors with similar or inferior qualifications.

17.     On information and belief, Hofstra set Professor Manta's initial starting salary within (or below) the range that it had paid to at least some entry-level associate professors in the several years before she was hired. But Professor Manta was *not* an entry-level professor. As explained above, by the time she joined Hofstra, she had already been teaching for approximately six years, including three years of teaching in a tenure-track position at a higher-ranked institution than Hofstra.

18.     Under Professor Manta's initial employment agreement with Hofstra, she was eligible for tenure and promotion within three years of her joining the Hofstra Law faculty, and she was not subject to renewal votes of the faculty before being voted on for tenure. In contrast, had Professor Manta been an entry-level hire, she would not have been eligible for a tenure vote until she had been on the faculty for at least six years, and she would have been subject to two faculty votes concerning her performance before being eligible to be considered for tenure.

4

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

Professor Manta's Career at Hofstra

19.    Professor Manta has been highly successful at Hofstra Law. As a law professor, Professor Manta's duties include teaching students, publishing scholarship, and providing service to the Law School. Professor Manta's performance in each of these areas has been excellent.

20.    While at the Law School, Professor Manta has taught various intellectual property courses and property. When Professor Manta was evaluated for tenure, her teaching was praised by Dean Lane and other members of the Law School faculty for "organization and clear explanation of legal issues and concepts, her classroom presence, her mastery of the class material, and her ability to bring students in the class discussion." Moreover, Professor Manta's intellectual property classes have consistently been popular electives with students. Professor Manta has also been an informal mentor to many students and recent graduates of the Law School.

21.    Professor Manta has provided substantial service to the Law School. Since 2014, she has served as the Founding Director of the Law School's Center for Intellectual Property Law. For the 2018-19 academic year, she served as the Associate Dean for Research and Faculty Development. Professor Manta has also served on approximately eleven committees (some for multiple years) at the Law School, including the Teaching Excellence Committee, the Curriculum and Academic Standards Committee, the Clerkship Committee, the Admissions Committee, and the Ad Hoc Committee on Distance Education. Other aspects of her service include the creation and direction of the vast majority of Hofstra Law's intellectual property program.

22.    Professor Manta has also raised the profile of the Law School by her affiliation as a program affiliate scholar with the NYU School of Law. In 2019, she became a regular contributor to the *Volokh Conspiracy*, which is one of the most well-known and prestigious blogs in legal academia. Professor Manta has also made dozens of outside speaking appearances during her time

5

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM

INDEX NO. 156172/2021

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 06/29/2021

at Hofstra Law, and she has been quoted and published on many occasions in the media on matters related to her areas of expertise.

23.     For years, Professor Manta has been the most productive scholar on the Hofstra Law faculty. While at the Law School, in addition to co-authoring a casebook on the criminal law of intellectual property and information, Professor Manta has authored or co-authored approximately fifteen major publications, many of which have appeared or will appear in notable journals such as the *New York University Law Review*, the *Vanderbilt Law Review*, the *Wake Forest Law Review*, the *Emory Law Journal*, and the *William & Mary Law Review*, among others.

24.     In 2014, Hofstra University awarded Professor Manta the Lawrence A. Stessin Prize for Outstanding Scholarly Publications, which Hofstra grants on an annual basis to two non-tenured members of the faculty throughout the University.

25.     Professor Manta's scholarly productivity has resulted in her receiving multiple research fellowships, including the John DeWitt Gregory Research Scholarship, which can be held by only one member of the Law School faculty at a time.

26.     Based on her record of achievement, Professor Manta received an overwhelmingly favorable vote of the Law School faculty when she first became eligible for tenure in 2015, and she became a full Professor of Law that year after she received approval from the President and Trustees of the University. Her tenure became effective in 2016.

Professor Manta's Salary History

27.     During her employment with Hofstra Law, Professor Manta's salary for each academic year is reflected in the following table.

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

| Academic Year | Professor Manta's Salary |
|---|---|
| 2012-2013 | $129,000 |
| 2013-2014 | $136,320 |
| 2014-2015 | $131,523 |
| 2015-2016 | $131,523 |
| 2016-2017 | $133,510 |
| 2017-2018 | $148,510 |
| 2018-2019 | $157,539 |
| 2019-2020[1] | $162,892 |
| 2020-2021 | $162,892 |

Salary Comparators

28.      During Professor Manta's employment with Hofstra Law, she learned that, as of her hire in July 2012, she has been paid substantially less than at least two male professors at the Law School, referred to below as Professor A and Professor B. The disparities between Professor Manta's salary and the salaries of Professor A and Professor B began when Professor Manta was hired and have continued to the present.

29.      Professor Manta, Professor A, and Professor B are each law professors and have generally equivalent duties for teaching, scholarship, and service.

30.      From the time of Professor Manta's hire in 2012 through the end of the 2016-2017 academic year, Hofstra paid Professor A approximately $52,000 more annually than Professor

---

[1]      During the 2019-2020 academic year, Plaintiff was a visiting professor at St. John's University School of Law, but her salary was set by Hofstra.

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

Manta. During the same period, Hofstra paid Professor B about $16,000 more in annual salary than Professor Manta.

31.     From the 2017-2018 academic year to the present, Hofstra paid Professor A approximately $37,000 more annually than Professor Manta and Professor B $10,000 more than her.

32.     Professor Manta and Professor A have about the same amount of law school teaching experience. Professor Manta has approximately 2 ½ years more of law school teaching experience than Professor B.

33.     Although Professors A and Professor B teach different subjects than Professor Manta, the salary markets for those subjects are not materially different than the market for intellectual property professors. In any event, on information and belief, Hofstra does not pay law professors differently based on the subjects that they teach.

34.     Since Professor Manta has joined the Law School faculty, her publication record is superior to Professor A's record of publications both with respect to the total number of publications and the quality of the law journals that have published their respective works. Professor Manta's publication record has been vastly superior to Professor B's publication record measured by those same standards.

35.     Professor Manta and Professor B were each approved for tenure and promotion to full professor at or about the same time in 2015. As discussed above, the faculty vote in support of her tenure was overwhelmingly favorable. In contrast, on information and belief, Professor B's tenure application was more controversial than Professor Manta's. Still, the Law School continued to pay him substantially more than Professor Manta throughout this period. For the 2016-2017

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM
NYSCEF DOC. NO. 1

INDEX NO. 156172/2021
RECEIVED NYSCEF: 06/29/2021

academic year, Professor Manta was paid a base salary of $133,510 while Professor B was paid $149,240.

36.     The salaries that Hofstra pays to law professors are not based on a seniority system, a merit system, or a system which measures earnings by quantity or quality of production.

37.     The Law School values seniority differently for men and women.

38.     For example, as of September 2018, the Law School hired two new male members of the tenure-track faculty, referred to below as Professor C and Professor D, each at an annual salary of $140,000.

39.     On information and belief, Professor C had no law school teaching experience before being hired by the Law School; Professor D had only two years of law school teaching experience.

40.     As a result of these hires, the Law School was compelled to raise Professor Manta's salary retroactively for the 2017-2018 academic year from approximately $133,000 to $148,510 because it would have been too blatantly discriminatory to pay its most productive scholar $7,000 *less* in salary than two newly hired men who had little or no teaching experience.

41.     Nevertheless, it is revealing of the Law School's discriminatory intent that, even with the retroactive increase given to Professor Manta, Hofstra Law paid Professor Manta only $8,500 more than the starting salaries of these two incoming and inexperienced male professors.

42.     As a result of a subsequent across-the-board raise negotiated by the Law School's faculty association, for which Professor C and Professor D were not eligible as new professors, Professor Manta's salary for the 2018-2019 academic year was approximately $157,000. Still, even with this raise, Professor Manta was paid only $17,000 more than two new male faculty members.

9

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM    INDEX NO. 156172/2021

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/29/2021

43.    The differential in pay between Professor Manta and the two recently hired male faculty members is substantially less than the pay disparity between Professor Manta and Professor A, even though Professor Manta and Professor A have approximately the same amount of law school teaching experience.

<u>Professor Manta's Efforts to Be Paid in a Non-Discriminatory Manner</u>

44.    Within the first two years of joining the Hofstra Law faculty, Professor Manta had another conversation with Dean Lane about her salary, which, approximately two years after her start date, had only increased by about $2,500.

45.    During that conversation, Professor Manta asked Lane for a raise in salary, noting, among other circumstances, that her contributions to the Law School and scholarly productivity warranted a significant increase.

46.    Dean Lane acknowledged that Professor Manta was underpaid, but he said that there was a rule at the Law School preventing anyone from being paid more than the "person above them."

47.    By this, it was clear that Dean Lane was suggesting that Hofstra Law had a lockstep compensation system in which salary was limited by seniority and that Professor Manta's salary could not be adjusted because she would then be earning more than a faculty member with greater seniority.

48.    Once again, however, Dean Lane's statements were not true. The Law School does not have a lockstep compensation or any other formalized compensation system. Contrary to Dean Lane's statements, there was never a seniority "rule" that prevented him from raising Professor Manta's admittedly low salary.  And even if there had been a seniority rule, Hofstra still could

10

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM INDEX NO. 156172/2021

NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 06/29/2021

have granted Professor Manta a substantial raise without paying her more than the next most senior faculty member.

49. On information and belief, Dean Lane dissembled about Professor Manta's starting salary and the Law School's compensation system because he was attempting to conceal that the Law School was paying Professor Manta substantially less than similarly situated male peers.

50. Near the end of his deanship in 2016, Professor Manta initiated another conversation about her salary concerns with Dean Lane. On that occasion, Dean Lane said that he believed that faculty salaries were set based on law school graduation year. That statement was different from his previous assertion about how salaries were set at the Law School and was also not accurate.

51. As of May 1, 2017, Hofstra appointed Gail Prudenti as the Dean of the Law School. On several occasions thereafter, Professor Manta spoke to Dean Prudenti and Plaintiff said that she believed that the Law School was discriminating against her and other women with respect to salary. Initially, Dean Prudenti told Professor Manta that she would look into the situation. However, these conversations did not result in the elimination of Hofstra's discriminatory pay practices.

52. On or about December 12, 2018, Professor Manta's counsel wrote to the Law School, asserting salary discrimination claims on behalf of Professor Manta. Again, Hofstra did not remedy the salary disparities identified by Professor Manta through her counsel.

Retaliation by Hofstra

53. After Hofstra received the letter from Professor Manta's counsel and Defendant learned that she was opposing Hofstra's discriminatory practices, Plaintiff experienced negative

11

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM                   INDEX NO. 156172/2021
NYSCEF DOC. NO. 1                                                   RECEIVED NYSCEF: 06/29/2021

consequences from the Law School that were meant to punish her for asserting her legal rights to be free from salary discrimination.

54.     Beginning in the summer of 2018, in addition to Professor Manta's duties as a professor, she also served in the role of Associate Dean for Research and Faculty Development ("Research Dean") at the Law School. Her main responsibility in that role, for which she was paid an additional $6,000 on an annual basis, was to increase the Law School's scholarly productivity and promote the scholarly work of the faculty, both internally and externally.

55.     Professor Manta was very successful in the time she held the position. The 2018-2019 academic year was the Law School's most successful for scholarly activity in many years, with respect both to the quality and quantity of law reviews in which Hofstra Law professors' articles were accepted for publication. Professor Manta was particularly active in promoting the work of the Law School faculty, both within the University and externally.

56.     On March 7, 2019, Professor Manta informed Hofstra Law that she had been offered a visiting professor role at the St. John's University School of Law for the 2019-2020 academic year. Visiting other schools for limited periods is a standard and accepted practice in the law school academic world.

57.     When Professor Manta informed the Law School of her visiting professorship with St. John's, she also communicated that she would be able to continue to perform the duties of Research Dean at Hofstra and emphasized her interest in doing so. This was particularly feasible insofar as St. John's campus is less than 20 miles from Hofstra Law.

58.     However, Professor Manta was informed by the Law School that her role as Research Dean would be reassigned to someone else on the faculty for the 2019-2020 academic

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM   INDEX NO. 156172/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 06/29/2021

year because the administration purportedly wanted someone in the role who was not visiting at another institution.

59.    As Professor Manta's visit to St. John's was winding down in or about the summer of 2020, she informed the Law School that she would be interested in resuming the Research Dean position when her visit was complete.

60.    In or about late July 2020, the Law School informed her that it was eliminating the Research Dean position for the fall of 2020 because visitors would not be permitted on campus due to COVID-19 concerns. But this explanation did not make sense because the Research Dean's role has not been limited to organizing campus visits. Rather, as stated above, the main goal of the position has been to increase the Law School's scholarly productivity and promote the scholarly work of the faculty.

61.    On information and belief, the Research Dean duties were assigned to a male faculty member for the Spring 2021 semester. On March 3, 2021, Professor Manta inquired with Senior Associate Dean Julian Ku about her resuming the position for the 2021-2022 academic year. About two weeks later, Dean Ku responded that he would consult with Dean Prudenti about it. Professor Manta never heard back from either Dean Ku or Dean Prudenti, and on information and belief the same male faculty member will continue in the role for the 2021-2022 academic year.

62.    Hofstra has reassigned the Research Dean position from Professor Manta and has declined to reinstate her to the role to punish her for hiring counsel and opposing discrimination.

### FIRST CAUSE OF ACTION
### Sex Discrimination Under New York State Human Rights Law

63.    Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

13

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM

NYSCEF DOC. NO. 1

INDEX NO. 156172/2021

RECEIVED NYSCEF: 06/29/2021

64.     By the acts and practices described above, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, in violation of the NYSHRL.

65.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

66.     Defendant discriminated against Plaintiff with willful or wanton negligence or recklessness. Defendant also engaged in conscious disregard of the right of Plaintiff to be free of unlawful discrimination or engaged in conduct so reckless as to amount to such disregard.

SECOND CAUSE OF ACTION
Sex Discrimination under the NYEPA

67.     Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

68.     During Plaintiff's employment with Hofstra, Defendant was subject to the provisions of the New York Equal Pay Act, Labor Law § 194. Defendant discriminated against Plaintiff by paying higher wages to male colleagues for equal work on a job which required equal skill, effort, and responsibility, and which was performed under similar working conditions.

69.     In the alternative, Defendant has paid Plaintiff's male colleagues more than Plaintiff for substantially similar work when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

70.     The differential rate of pay described above was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other than sex.

71.     Based on the actions described above, among others, Defendant cannot demonstrate that it had a good-faith basis to believe that its underpayment of wages complied with the law.

14

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM

NYSCEF DOC. NO. 1

INDEX NO. 156172/2021

RECEIVED NYSCEF: 06/29/2021

Accordingly, Defendant has committed willful violations of law within the meaning of New York Labor Law § 198(1-a).

## THIRD CAUSE OF ACTION
### Sex Discrimination under the EPA

72.     Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

73.     During Plaintiff's employment with Hofstra, Defendant was subject to the provisions of the Equal Pay Act, 29 U.S.C.§ 206(d). Defendant has paid Plaintiff less than male colleagues in the same establishment for equal work on a job, the performance of which requires equal skill, effort, and responsibility, and which is performed under similar working conditions.

74.     The differential rate of pay described above was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon any factor other than sex.

75.     Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for plaintiff's statutorily protected rights.

## FOURTH CAUSE OF ACTION
### Retaliation Under NYSHRL

76.     Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

77.     By the acts and practices described above, Defendant retaliated against Plaintiff because she opposed unlawful discrimination and filed a charge of discrimination, in violation of the NYSHRL.

78.     Plaintiff is now suffering and will continue to suffer monetary damages and damages for mental anguish and humiliation as a result of Defendant's retaliatory acts.

79.     Defendant retaliated against Plaintiff with willful or wanton negligence or recklessness. Defendant also engaged in conscious disregard of the right of Plaintiff to be free of

15

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM    INDEX NO. 156172/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 06/29/2021

unlawful discrimination and retaliation or engaged in conduct so reckless as to amount to such disregard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an award:

(a)     declaring the acts and practices complained of herein in violation of the NYSHRL, NYEPA and EPA;

(b)     awarding Plaintiff all earnings she would have received but for Defendant's violations of the NYSHRL, NYEPA, and EPA, as well as lost future earnings;

(c)     awarding Plaintiff compensatory damages for emotional distress and humiliation for Defendant's discriminatory and retaliatory actions, pursuant to the NYSHRL;

(d)     awarding Plaintiff punitive damages, pursuant to the NYSHRL;

(e)     awarding Plaintiff liquidated damages, pursuant to New York Labor Law § 198(1-a) and the EPA;

(f)     awarding Plaintiff pre-judgment and post-judgment interest, as well as reasonable attorney's fees and the costs of this action;

(g)     awarding Plaintiff damages relating to adverse tax consequences; and

(h)     awarding such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury in this action.

16

FILED: NEW YORK COUNTY CLERK 06/29/2021 01:31 PM          INDEX NO. 156172/2021
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 06/29/2021

Dated: New York, New York
      June 29, 2021

                                   LAW OFFICE OF
                                   KEVIN MINTZER, P.C.

By:

                                   Kevin Mintzer
                                   1350 Broadway – Suite 2220
                                   New York, New York 10018
                                   (646) 843-8180
                                   km@mintzerfirm.com

                                   Counsel for Plaintiff Irina Manta

17

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NEW YORK
-----------------------------------------------------------------x
IRINA MANTRA

                              Plaintiff/Petitioner,

              - against -                              Index No.156172/2021

HOFSTRA UNIVERSITY

                              Defendant/Respondent.
-----------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney**:
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **<u>If</u> you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: <u>www.nycourts.gov/efile-unrepresented</u> or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at <u>www.nycourts.gov</u>

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 6/30/21 _____

Kevin Mintzer                                    1350 Broadway, Suite 2220
        **Name**                                        **Address**
Law Office of Kevin Mintzer, P.C.
                                                 New York, New York 10018
        **Firm Name**

                                                 646.843.8180
                                                        **Phone**

                                                 km@mintzerfirm.com
                                                        **E-Mail**

To:   Hofstra University _____

      _____

      _____

6/6/18